J. S44045/19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: | : | IN THE SUPERIOR COURT OF |
| B.J.Z., A MINOR | : | PENNSYLVANIA |
| IN THE INTEREST OF: | : | |
| K.M.D., A. MINOR | : | |
| | : | No. 807 WDA 2019 |
| APPEAL OF: K.L.Z. | : | |

Appeal from the Order Entered December 12, 2018,
in the Court of Common Pleas of Clearfield County
Orphans' Court Division at Nos. OC-3488-2018,
OC-3489-2018

BEFORE: SHOGAN, J., McLAUGHLIN, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:     **FILED JANUARY 27, 2020**

K.L.Z. ("Mother") appeals from the December 12, 2018 order entered in the Court of Common Pleas of Clearfield County, Orphans' Court Division, involuntarily terminating her parental rights to her dependent children, B.J.Z., male child, born in March 2009,[1] and K.M.D., female child, born in September 2007[2] (collectively, the "Children"), pursuant to the Adoption Act,

---

[1] The record reflects that B.J.Z.'s natural father is deceased. (Notes of testimony, 9/5/17 at 77.)

[2] The record reflects that the whereabouts of K.M.D.'s natural father are unknown. (Notes of testimony, 9/5/17 at 20.) The record further reflects that K.M.D.'s birth certificate fails to identify her natural father. (Petition for involuntary termination of parental rights, 5/30/18 at Exhibit "A.")

J. S44045/19

23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), (8), and (b).[3,4]  After careful review,

we affirm.

The trial court set forth the following:

> The Children were initially found to be dependent after a hearing on October 5, 2015.  The finding of dependency at that time was primarily due to mental health concerns and drug and alcohol use by Mother.  Physical custody was returned to Mother for a brief time on May 9, 2016, due to a progression in reaching goals, cooperation in drug and alcohol testing and positive visitation periods with the Children.  However, physical custody of the Children returned to [Children, Youth & Family Services ("CYS")] on September 13,

---

[3] We note that on January 3, 2019, Mother filed a single notice of appeal listing two docket numbers in each docket below in violation of Pa.R.A.P. 341.  **See Commonwealth v. Walker**, 185 A.3d 969, 977 (Pa. 2018) (holding that quashal is required where litigants fail to file separate notices of appeal from an order resolving issues on more than one docket number).  Subsequently, on July 22, 2019, this court in **Commonwealth v. Creese**, 216 A.3d 1142 (Pa.Super. 2019), interpreted **Walker** as prohibiting us from accepting a notice of appeal listing multiple docket numbers, even if a separate notice of appeal is filed in each docket, as was done by Mother in the appeal before us.  Because Mother filed her notices of appeal prior to **Creese** being decided, previous decisional law may have been unclear insofar as requiring Mother to list only one docket number on each notice of appeal.  We further note that after **Walker** and before **Creese**, this court did not quash an appeal where an appellant filed a notice of appeal bearing multiple docket numbers in each docket.  Therefore, we decline to quash this appeal based on noncompliance with Rule 341 because Mother filed her notices of appeal prior to **Creese** being decided.

[4] We also note that the trial court appointed separate legal counsel to represent the Children's legal interests, as well as a guardian **ad litem** to represent the Children's best interests.  **See In re Adoption of L.B.M.**, 161 A.3d 172, 179-180 (Pa. 2017) (plurality) (requiring the appointment of separate legal counsel, in addition to a guardian **ad litem**, in contested involuntary termination proceedings); **see also In re D.L.B.**, 166 A.3d 322, 329 (Pa.Super. 2017) (concluding that "separate representation would be required only if the child's best interests and legal interests were somehow in conflict.").

- 2 -

2016, following a hearing on Petitions for Emergency Physical Custody filed by [CYS]. The petitions were filed due to concerns that Mother was planning to take the Children to Texas, disregarding the fact that CYS had legal custody. Prior to the Petitions for Emergency Custody, CYS filed a Petition for Physical Custody and Contempt against Mother due to concerns regarding a notable decline in her progress. Specifically,

> the home had a severe infestation of bedbugs and lice, the [Children] were missing school, Mother would not answer the door when caseworkers or service providers attempted to contact, Mother lost her employment, Mother was evicted, Mother tested positive for THC in early July 2016 and refused to provide additional drug tests, Mother no longer attended drug and alcohol treatment, and Mother felt overwhelmed with her situation, partly because another Juvenile had moved into her residence.

With the agreement of Mother, these petitions for physical custody of Children were granted on September 19, 2016.

The concerns that caused the initial finding of dependency are ongoing. The Children have remained in the physical care of CYS since September 13, 2016. CYS has maintained legal custody of the Children since October 5, 2015, a period of thirty-seven (37) months. During this time, Mother has continually struggled in rectifying the same issues. In particular, concerns remain regarding the use of alcohol and controlled substances. Additionally, lack of stable housing and financial resources has been a constant since the case was opened.

Trial court opinion, 12/12/18 at 3-4 (some brackets in original; record citations and quotation marks omitted).

The record reflects that the trial court held a termination hearing on September 5, 2018. Thereafter, on December 12, 2018, the trial court entered the order involuntarily terminating Mother's parental rights to the Children. Mother filed timely notices of appeal on January 3, 2019, followed by concise statements of errors complained of on appeal. Although Mother did not file her concise statements contemporaneously with her notices of appeal, as required by Pa.R.A.P. 1925(a)(2)(i), Mother set forth the issue she currently raises on appeal in that statement. Therefore, in accordance with *In re J.T.*, 983 A.2d 771 (Pa.Super. 2009), Mother's late filing of her Rule 1925(a)(2)(i) statement does not result in waiver of her claim on appeal. *Id.* at 774-775 ("[i]f late filing of the 1925 statement waived [the m]other's appeal rights in this case, there has been *per se* ineffectiveness of counsel just as there was for the appellant in [*Commonwealth v. Burton*, 973 A.2d 428 (Pa.Super. 2009) (*en banc*)]. We conclude that as in *Burton*, in parental termination cases a late filing of a required 1925 statement does not mandate a finding of waiver."). The record further reflects that by correspondence dated June 10, 2019, the trial court advised this court that it would not issue a further opinion in this matter, but would rely upon its December 12, 2018 opinion and order. (Docket #25.)

Mother raises the following issue on appeal:

> Whether the [trial c]ourt erred in terminating Mother's parental rights when evidence was presented that Mother was not evidencing a settled purpose to relinquish her parental claims to the [C]hildren and

> that she had made substantial progress in alleviating the circumstances that led to the initial placement of the [C]hildren[?]

Mother's brief at 7.

In matters involving involuntary termination of parental rights, our standard of review is as follows:

> The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id.* "[A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." *Id.* The trial court's decision, however, should not be reversed merely because the record would support a different result. *Id.* at 827. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. *See In re R.J.T.*, 9 A.3d [1179, 1190 (Pa. 2010)].

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G.*, 855 A.2d 68, 73-74 (Pa.Super. 2004) (citation omitted). "[I]f competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *In re Adoption of T.B.B.,* 835 A.2d 387, 394 (Pa.Super. 2003) (citation omitted).

The termination of parental rights is guided by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis of the grounds for termination followed by the needs and welfare of the child.

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted). We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*), quoting *Matter of Adoption of Charles E.D.M. II*, 708 A.2d 88, 91 (Pa. 1998).

Here, the trial court terminated Mother's parental rights pursuant to Sections 2511(a)(1), (2), (5), and (8), as well as (b). We have long held that, in order to affirm a termination of parental rights, we need only agree with the trial court as to any one subsection of Section 2511(a), as well as

Section 2511(b). *In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). We will, therefore, analyze the trial court's termination order pursuant to Subsections 2511(a)(2) and (b), which provide as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . . .
>
> > (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

We first address whether the trial court abused its discretion by terminating Mother's parental rights pursuant to Section 2511(a)(2).

> In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa.Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re Adoption of C.D.R.*, 111 A.3d 1212, 1216 (Pa.Super. 2015), quoting *In re A.L.D.*, 797 A.2d 326, 337 (Pa.Super. 2002). "Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. . . . [A] parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous." *In re A.L.D.*, 797 A.2d at 340 (internal quotation marks and citations omitted).

Here, in terminating Mother's parental rights to the Children, the trial court initially noted that:

> [t]he concerns that caused the initial finding of dependency are ongoing. The Children have remained in the physical care of CYS since September 13, 2016. CYS has maintained legal custody of the Children since October 5, 2015, a period of thirty-seven (37) months. During this time, Mother has continually struggled in rectifying the

same issues. In particular, concerns remain regarding the use of alcohol and controlled substances. Additionally, lack of stable housing and financial resources has been a constant since the case was opened.

Trial court opinion, 12/12/18 at 4.

With respect to termination under Section 2511(a)(2), the trial court found that:

Mother has in fact not remedied the problems causing the Children to be without essential parental care, control or subsistence. She testified on her own behalf to continuing to make progress in meeting her goals. However, said goals remain unmet over two years later. At the time of the hearing on the instant petitions, Mother remains unsuccessful in completing drug and alcohol counseling, despite assistance from CYS. These are the very same problems that led to the initial finding of dependency in 2015, and caused CYS to take physical custody from Mother for a second time on September 19, 2016.

Mother also remains unsuccessful in finding and maintaining stable and appropriate housing for the Children. She is currently living with a friend and his mother in Ridgway, Pennsylvania and offered no evidence that she is on her way to finding adequate housing. Mother has not progressed from supervised visits with the Children and minimizes her role as a parental figure while desiring to act more as a friend. Because of this, she lacks the ability to provide structure and discipline in the Children's lives.

*Id.* at 6-7.

We have thoroughly reviewed the record in this case and conclude that it supports the trial court's factual findings and that the trial court did not abuse its discretion in terminating Mother's parental rights under

Section 2511(a)(2). The record clearly supports the finding that Mother has failed to meet her goals, has a specious work history, is inconsistent with respect to housing, and continues to battle with drugs and alcohol. (***See***, ***e.g.***, notes of testimony, 9/5/18 at 28-34.) The record further reveals that Mother is unable or unwilling to provide structure for the Children and engage in good decision-making, preferring to play with the Children, for example, as opposed to helping them with their homework. (***Id.*** at 34-36.) The record demonstrates that the conditions that existed upon removal establish repeated and continued incapacity, abuse, neglect, or refusal of Mother that caused the Children to be without essential parental care, control, or subsistence necessary for their physical or mental well-being. The record also supports the trial court's conclusion that Mother continued to lack capacity to parent the Children.

We now turn to whether termination was proper under Section 2511(b). As to that section, our supreme court has stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.[A.] § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." ***In re K.M.***, 53 A.3d 781, 791 (Pa.Super. 2012). In ***In re E.M.***, 620 A.2d [481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. ***In re K.M.***,

> 53 A.3d at 791. However, as discussed below, evaluation of a child's bonds is not always an easy task.

*In re T.S.M.*, 71 A.3d at 267. "In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 762-763 (Pa.Super. 2008) (citation omitted).

When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation." *In re Z.P.*, 994 A.2d 1108, 1121 (Pa.Super. 2010) (internal citations omitted).

Moreover,

> [w]hile a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
> > [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. . . .

*In re Adoption of C.D.R.*, 111 A.3d at 1219, quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa.Super. 2011) (quotation marks and citations omitted).

Our supreme court has stated that, "[c]ommon sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." *T.S.M.*, 71 A.3d at 268. The court directed that, in weighing the bond considerations pursuant to Section 2511(b), "courts must keep the ticking clock of childhood ever in mind." *Id.* at 269. The *T.S.M.* court observed, "[c]hildren are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail . . . the result, all too often, is catastrophically maladjusted children." *Id.*

Here, in terminating Mother's parental rights under Section 2511(b), the trial court found that:

> Dr. Allen Ryen provided testimony at the hearing on termination of Mother's parental rights that the Children are in need of permanency, which cannot be postponed indefinitely. Further, he opined that the bond between Mother and Children is more detrimental than it is conducive to the physical and mental well-being of the Children. The lack of progress in the goals to be met combined with the lengthy amount of time that has passed indicates that Mother is unable or unwilling to eliminate the problems that initially led to placement.
>
> Significantly, the record shows that the Children are doing very well with their foster parents. Mother, however, demonstrates an inability to maintain a presence in the Children's lives and the Children could not afford a future disruption in Mother's custody. Ongoing caseworker for CYS [Crystal] Vicklund testified that the foster parents demonstrate a loving and healthy relationship with the Children, and that "they interact as a whole unit . . . it's very family oriented within their home." . . . Testimony presented

at the termination hearing demonstrates these intangibles cannot be provided by Mother due to her inability to provide stable housing, issues with substance abuse, and her lack of progress in demonstrating effective parenting techniques.

Trial court opinion, 12/12/18 at 9-10 (record citations and some quotation marks omitted).

Based upon our review of the record, we find no abuse of discretion and conclude that the trial court appropriately terminated Mother's parental rights under Sections 2511(a)(2) and (b).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/27/2020